UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTM2J LLC,<br><br>Plaintiff,<br><br>v.<br><br>AYDEN BREWER, et al.,<br><br>Defendants. | No. 2:25-cv-00380-DAD-SCR<br><br>ORDER GRANTING DEFENDANT BREWER'S MOTION TO DISMISS IN PART, GRANTING DEFENDANTS LITZ AND ST. GEORGE'S MOTION TO DISMISS IN PART, GRANTING PLAINTIFF'S REQUEST TO SEAL, AND DENYING DEFENDANTS' MOTION FOR SANCTIONS.<br><br>(Doc. Nos. 15, 16, 30, 40) |

This matter is before the court on defendant Brewer's motion to dismiss plaintiff's first amended complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants St. George and Litz's motion to dismiss plaintiff's FAC pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), plaintiff's request to seal documents, and defendants' motion for sanctions pursuant to Federal Rule of Civil Procedure 11. (Doc. Nos. 15, 16, 30, 40.) The pending motions were taken under submission pursuant to Local Rule 230(g). (Doc. Nos. 38, 41.) For the reasons below, the court will grant defendants' respective motions to dismiss in part, will grant plaintiff's request to seal, and will deny defendants' motion for sanctions.

/////

1

**BACKGROUND**

On January 27, 2025, plaintiff JustM2J LLC initiated this fraud action against named defendants Ayden Brewer, Jon Litz, and Jason St. George.  (Doc. No. 1.)  On February 28, 2025, plaintiff file its FAC.  (Doc. No. 14.)  In its FAC, plaintiff alleges the following.

Plaintiff is a Delaware limited liability company that is the assignee of all claims belonging to Nakamoto LLC and a number of individuals related to a series of cyber-attacks ("the Bittensor attack") against the participants of Bittensor.  (*Id.* at ¶¶ 1, 10.)  Together, these assignments amount to approximately 99% of all assets purportedly stolen during the Bittensor attack, totaling approximately $30,300,000.  (*Id.* at ¶¶ 2, 10; *id.* at 28.)  Bittensor is a decentralized network that is designed to foster collaboration and competition among AI researchers.  (*Id.* at ¶ 21.)  It does this by allowing participants to earn rewards in the form of a digital token called TAO for providing computations and machine learning models aimed at completing certain tasks, such as image recognition.  (*Id.* at ¶¶ 22, 24.)  Bittensor is open-source in that its source code is freely available to the public.  (*Id.* at ¶ 21.)  Participants in Bittensor must have a piece of software called a wallet which enables them to receive, store, and transfer TAO and a private key that allows a user to access and control a wallet and its contents.  (*Id.* at ¶ 23.)

Defendants St. George and Brewer were employees of Opentensor Foundation ("Opentensor"), which maintains, develops, and improves Bittensor.  (*Id.* at ¶¶ 27, 30.)  During his tenure there, defendant St. George had access to Opentensor's proprietary key which allowed access to Opentensor's PyPI account.  (*Id.* at ¶ 27.)  PyPI is a Python-language software repository which allows users to upload software packages, which are authenticated by using a proprietary key such as the one which Opentensor possessed.  (*Id.* at ¶ 26.)  Defendant St. George assisted in designing Bittensor's wallet software code, which is the code that was later manipulated during the Bittensor attack.  (*Id.* at ¶ 34.)  Defendant Litz had applied for a developer position at Opentensor on defendant Brewer's recommendation but was rejected.  (*Id.* at ¶ 32.)  Defendants Brewer, Litz, and St. George collaborated on a specific Bittensor subnet called FileTAO.  (*Id.* at ¶ 41.)  In December 2023, defendant St. George told other Opentensor

1    employees he would leave Opentensor to run FileTAO full-time.  (*Id.* at ¶ 42.)  Defendants

2    Brewer and St. George created Vertex Storage Solutions, LLC, which had its principal place of

3    business in Sacramento, California, to serve as FileTAO's owner.  (*Id.* at ¶¶ 42, 43.)

4         Plaintiff alleges, on information and belief, that defendants Brewer, St. George, and Litz

5    had entered into an agreement to plan and execute the Bittensor Attack at some time between

6    December 2023 and April 2024.  (*Id.* at ¶ 45.)  Defendants registered a domain named

7    opentensor.io which appeared as though it belonged to Opentensor.  (*Id.* at ¶ 26.)  On May 22,

8    2024, Opentensor released an upgrade to Bittensor's software called version 6.12.2.  (*Id.* at ¶ 47.)

9    This release first took place on Github, which is an open-source code repository that Opentensor

10   uses for Bittensor.  (*Id.*)  This release was also intended to be published on PyPI by Opentensor.

11   (*Id.* at ¶ 48.)  However, defendants used the proprietary Opentensor key to upload a malicious

12   version of the Bittensor update.  (*Id.*)  This prevented the upload of the legitimate version 6.12.2

13   of Bittensor to PyPI by Opentensor.  (*Id.*)  Bittensor users who downloaded version 6.12.2 from

14   PyPI prior to July 2, 2024, therefore received a malicious version of the update which executed

15   the same functions but also intercepted private keys associated with the wallets of those users and

16   sent those keys to opentensor.io.  (*Id.* at ¶ 50.)  One of the final actions of the FileTAO subnet

17   was to publish an update that required FileTAO participants to download the version 6.12.2 from

18   PyPI.  (*Id.* at ¶¶ 44, 85–87.)  On June 10, 2024, defendants Brewer and St. George transferred

19   most of FileTAO's assets out of Bittensor.  (*Id.* at ¶ 88.)  On June 11, 2024, defendant St. George

20   deleted the open-source FileTAO code repository and deregistered FileTAO.  (*Id.* at ¶¶ 88, 89.)

21        Between May 2, 2024, and July 2, 2024, the attackers used private keys obtained in this

22   manner to steal a total of 61,793.90 TAO from thirty-two (32) wallets, amounting to the

23   equivalent of roughly $30,300,000.  (*Id.* at ¶ 51.)  On May 30, 2024, one such private key was

24   used to obtain 1,030.9 TAO from a single wallet, amounting to roughly $507,000.  (*Id.* at ¶ 52.)

25   On June 1, defendants used a different private key obtained in this manner to steal a total of

26   28,368 TAO from another wallet, amounting to roughly $13,900,000.  (*Id.*)  On July 2,

27   defendants used thirty (30) additional keys obtained in this manner to steal 32,395 TAO, valued at

28   approximately $15,000,000, from thirty (30) wallets.  (*Id.*)

Opentensor subsequently placed the Bittensor network in safe mode and on July 3 discovered the malicious version that had been uploaded to PyPI.  (*Id.* at ¶¶ 53, 54.)  Opentensor retained a forensic investigator and contacted law enforcement regarding the Bittensor attacks, though plaintiff does not allege when the investigation conducted by the forensic investigator was completed.  (*Id.* at ¶ 55.)

A series of transfers and exchanges occurred which caused the assets taken in these three attacks which comprised the Bittensor attack to be deposited into specific wallet addresses ("the Destination Addresses") across several exchanges.  (*Id.* at ¶¶ 56, 57.)  Regarding these Destination Addresses, the court observes that several of the alleged endpoints for assets have remained the same since the filing of plaintiff's original complaint through the time of its filing of the FAC.  Accordingly, the court incorporates herein the background section of its February 7, 2025 order denying plaintiff's motion for temporary restraining order with respect to the Destination Addresses.[1]  (Doc. No. 7 at 3–8.)  Plaintiff now alleges that one of these addresses, specifically address 0x09F76d4FC3bcE5bF28543F45c4CeE9999E0a0Aaf, only temporarily held proceeds of the May 30, 2024 attack to provide initial funding for Destination Addresses traced as endpoints for proceeds of the June 1, 2024 attack.  (Doc. No. 14 at ¶ 66.)  Further, a specific wallet with address 0xD512AE64bbC1078B1ffAb3519F99776b049d4F08 was used by defendants Litz and Brewer to publish a non-fungible token in the past.  (*Id.* at ¶ 76.)  That wallet was used to send, through a series of transactions, some assets to a private wallet address ("the Suspected Laundering Service") that plaintiff alleges is associated with a money laundering service.  (*Id.* at ¶¶ 57, 76.)  Defendants Brewer and Litz also used another wallet to publish a non-fungible token, which between May 30, 2024 and June 11, 2024, received significant additional funds from cryptocurrency exchanges that had received proceeds from the Bittensor attack.  (*Id.* at ¶ 78.)

---

[1]  Plaintiff has alleged different dollar value amounts for the amount of cryptocurrency taken because those values have fluctuated.  (Doc. No. 14 at 30.)  Additionally, plaintiff has identified several new Destination Addresses and has amended its allegations regarding how much of each cryptocurrency asset reached certain addresses.  (*Id.* at 30–31.)  This order does not reproduce these changes for the sake of brevity.

4

Based upon these allegations, plaintiff asserts seven claims against defendants:
(1) accessing protected computers without authorization and causing damage or loss in violation
of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4) and
1030(a)(5)(C); (2) intercepting electronic communications by Bittensor participants in violation
of the Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*; (3) fraud; (4) conversion; (5) unjust enrichment;
(6) imposition of a constructive trust and disgorgement of funds; and (7) receipt of stolen property
in violation of California Penal Code § 496. (Doc. No. 14 at ¶¶ 100–154.)

On April 8, 2025, defendant Brewer filed his motion to dismiss, as did defendants St.
George and Litz. (Doc. Nos. 15, 16.) In addition, on April 8, 2025, defendants St. George and
Litz filed a request for judicial notice. (Doc. No. 18.) On May 6, 2025, plaintiff filed its
oppositions to those motions, and on May 7, 2025 plaintiff filed three declarations with attached
exhibits in support of those oppositions. (Doc. Nos. 24, 25, 26, 27, 28, 29.) On May 20, 2025,
defendants filed their replies thereto, as well as evidentiary objections to plaintiff's objections.
(Doc. Nos. 33, 34, 35.) On June 20, 2025, defendants filed a motion seeking the imposition of
sanctions against plaintiff pursuant to Rule 11. (Doc. No. 40.) On July 7, 2025, plaintiff filed its
opposition to that motion for sanctions. (Doc. No. 41.) On July 17, 2025, defendants filed their
reply thereto. (Doc. No. 43.)

Below, the court will first set out the applicable legal standards to be before turning to
address each of the pending motions.

## APPLICABLE LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Rule 12(b)(2)

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to
dismiss an action for lack of personal jurisdiction. In opposing such a motion, the plaintiff bears
the burden of proof to show that jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211
(9th Cir. 2015); *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). When a
defendant's motion to dismiss is based on written materials rather than an evidentiary hearing and
is to be decided on the pleadings, affidavits, and discovery materials, the plaintiff need only make
/////

1  a *prima facie* showing that personal jurisdiction exists in order for the action to proceed.  *See*

2  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); *Picot*, 870 F.3d at 1211.

3      In determining whether personal jurisdiction has been established, the court accepts the

4  plaintiff's allegations as true and resolves any conflicts between the parties over statements

5  contained in affidavits in the plaintiff's favor.  *Love*, 611 F.3d at 608; *Schwarzenegger v. Fred*

6  *Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  However, where allegations are

7  controverted by a defendant, the plaintiff cannot "simply rest on the bare allegations of [the]

8  complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise,

9  supporting personal jurisdiction."  *Philips v. Pitt Cnty. Mem'l Hosp., Inc.*, 855 F. App'x 324 (9th

10  Cir. 2021)[2] (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

11      "Where, as here, there is no applicable federal statute governing personal jurisdiction, the

12  law of the state in which the district court sits applies."  *Core-Vent Corp. v. Nobel Indus. AB*, 11

13  F.3d 1482, 1484 (9th Cir. 1993).  "California's long-arm statute allows courts to exercise personal

14  jurisdiction over defendants to the extent permitted by the Due Process Clause of the United

15  States Constitution."  *Core-Vent Corp.*, 11 F.3d at 1484; *see also* Cal. Civ. Proc. Code § 410.10

16  ("A court of this state may exercise jurisdiction on any basis not inconsistent with the

17  Constitution of this state or of the United States.").  Thus, only constitutional principles constrain

18  the jurisdiction of a federal court in California.  *Love*, 611 F.3d at 608–09.

19      Under the Fourteenth Amendment's due process clause, courts may exercise personal

20  jurisdiction over non-resident defendants only so long as there are sufficient "minimum contacts"

21  between the defendant and the forum state "such that maintenance of the suit does not offend

22  'traditional notions of fair play and substantial justice.'"  *World-Wide Volkswagen Corp. v.*

23  *Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

24  (1945)).  "Each defendant's contacts with the forum State must be assessed individually."  *Calder*

25  /////

26  /////

27

28  ---
[2]  Citations to the unpublished Ninth Circuit opinions throughout this order are appropriate
pursuant to Ninth Circuit Rule 36-3(b).

1    *v. Jones*, 465 U.S. 783, 790 (1984).[3]  "The strength of contacts required depends on which of the

2    two categories of personal jurisdiction a litigant invokes:  specific jurisdiction or general

3    jurisdiction."  *Ranza*, 793 F.3d at 1068.

4    **B.        Motion to Dismiss Pursuant to Rule 12(b)(6)**

5            The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

6    sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

7    1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

8    sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

9    F.2d 696, 699 (9th Cir. 1988).  A plaintiff is required to allege "enough facts to state a claim to

10   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

11   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

12   the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

13   Iqbal*, 556 U.S. 662, 678 (2009).

14           In determining whether a complaint states a claim on which relief may be granted, the

15   court accepts as true the allegations in the complaint and construes the allegations in the light

16   most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.

17   United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated on other grounds by DaVinci

18   Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019).  However, the court need not

19   assume the truth of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v.

20   Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed

21   factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me

22   accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and

23   conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S.

24   at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action,

25

26   [3]  A plaintiff must also establish personal jurisdiction for "each claim asserted against a
     defendant."  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir.

27   2004).  If personal jurisdiction exists over one claim, but not others, the district court may
     exercise pendent personal jurisdiction over any remaining claims that arise out of the same

28   "common nucleus of operative facts" as the claim for which jurisdiction exists.  *Id.*

1    supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to

2    assume that the plaintiff "can prove facts that it has not alleged or that the defendants have

3    violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal.,*

4    *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

5    **C.    Pleading Fraud Pursuant to Rule 9(b)**

6         A complaint alleging fraud must also satisfy heightened pleading requirements.  Fed. R.

7    Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

8    constituting fraud or mistake.").  "Fraud can be averred by specifically alleging fraud, or by

9    alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)."  *Kearns v.*

10   *Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317

11   F.3d 1097, 1107 (9th Cir. 2003)).  "When an entire complaint, or an entire claim within a

12   complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading

13   requirements of Rule 9(b), a district court may dismiss the complaint or claim."  *Vess*, 317 F.3d at

14   1107.

15        "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific

16   enough to give defendants notice of the particular misconduct . . . so that they can defend against

17   the charge and not just deny that they have done anything wrong."  *Kearns*, 567 F.3d at 1124

18   (citation and internal quotation marks omitted).  To satisfy the particularity standard of Rule 9(b),

19   the plaintiff must allege the "'who, what, when, where, and how' of the misconduct charged."  *Id.*

20   (citing *Vess*, 317 F.3d at 1106).

21   **D.    Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11**

22        "Rule 11 authorizes sanctions for pleadings 'presented for any improper purpose' or for

23   claims 'not warranted by existing law or by a nonfrivolous argument for extending, modifying, or

24   reversing existing law or for establishing new law.'"  *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, 848 F.

25   App'x 788 (9th Cir. 2021) (quoting Fed. R. Civ. P. 11); *see also* Fed. R. Civ. P. 11(b).  "Where,

26   as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a

27   two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from

28   an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent

8

1    inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir.

2    2002). "'Because the rule is not intended to chill an attorney's enthusiasm or creativity in

3    pursuing factual or legal theories,' Rule 11 sanctions are reserved for 'the exceptional

4    circumstance.'" *Lima v. Deutsche Bank Nat'l Tr. Co.*, 687 F. App'x 606 (9th Cir. 2017) (quoting

5    *Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1115 (9th Cir. 1990)).

6    **E.    Requests to Seal**

7         All documents filed with the court are presumptively public. *San Jose Mercury News,*

8    *Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the fruits

9    of pretrial discovery are, in the absence of a court order to the contrary, presumptively public.").

10   "Historically, courts have recognized a 'general right to inspect and copy public records and

11   documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*,

12   447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589,

13   597 & n.7 (1978)).[4]

14        Two standards generally govern requests to seal documents. *Pintos v. Pac. Creditors*

15   *Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010).

16              [J]udicial records attached to dispositive motions [are treated]
17              differently from records attached to non-dispositive motions. Those
              who seek to maintain the secrecy of documents attached to
18              dispositive motions must meet the high threshold of showing that
              "compelling reasons" support secrecy. A "good cause" showing
19              under Rule 26(c) will suffice to keep sealed records attached to non-
              dispositive motions.

20   *Kamakana*, 447 F.3d at 1180 (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122,

21   1135–36 (9th Cir. 2003)). The reason for these two different standards is that "[n]ondispositive

22   motions are often unrelated, or only tangentially related, to the underlying cause of action, and, as

23   a result, the public's interest in accessing dispositive materials does not apply with equal force to

24   non-dispositive materials." *Pintos*, 605 F.3d at 678 (internal quotation marks omitted).

25   /////

26   ――――――――――――――――――

27   [4]  Pursuant to Federal Rule of Civil Procedure 5.2(d), a court "may order that a filing be made
     under seal without redaction." However, even if a court permits such a filing, it may "later unseal
     the filing or order the person who made the filing to file a redacted version for the public record."
28   Fed. R. Civ. P. 5.2(d).

1    Under the "compelling reasons" standard applicable to dispositive motions, such as a

2    motion to dismiss:

> [T]he court must conscientiously balance the competing interests of
> the public and the party who seeks to keep certain judicial records
> secret.  After considering these interests, if the court decides to seal
> certain judicial records, it must base its decision on a compelling
> reason and articulate the factual basis for its ruling, without relying
> on hypothesis or conjecture.

7    *Id.* at 1178–79 (internal quotation marks and citations omitted).  The party seeking to seal a

8    judicial record bears the burden of meeting the "compelling reasons" standard.  *Id.* at 1178.

9    While the terms "dispositive" and "non-dispositive" motions are often used in this

10   context, the Ninth Circuit has clarified that the "compelling reasons" standard applies whenever

11   the motion at issue "is more than tangentially related to the merits of a case." *Ctr. for Auto Safety*

12   *v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).

13   "In general, 'compelling reasons' sufficient to . . . justify sealing court records exist when

14   such 'court files might . . . become a vehicle for improper purposes,' such as the use of records to

15   gratify private spite, promote public scandal, circulate libelous statements, or release trade

16   secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598).  "The mere fact that the

17   production of records may lead to a litigant's embarrassment, incrimination, or exposure to

18   further litigation will not, without more, compel the court to seal its records." *Id.*  Finally, "[t]he

19   'compelling reasons' standard is invoked even if the dispositive motion, or its attachments, were

20   previously filed under seal or protective order." *Id.* at 1178–79.

## DISCUSSION

22   **A.    Plaintiff's Request to Seal**

23   Plaintiff's request to seal at issue was filed as to exhibits submitted in support of an

24   opposition to a motion to dismiss and therefore is governed by the "compelling reasons" standard.

25   *See Arouh v. GAN Ltd.*, No. 8:23-cv-02001-FWS-JDE, 2024 WL 4800676 (C.D. Cal. Feb. 13,

26   2024) (finding that exhibits attached to an opposition to a motion to dismiss could only be sealed

27   for compelling reasons).  Specifically, plaintiff seeks to seal exhibits attached to the declarations

28   of Gyles Foster and Margaret Hoppin.  (Doc. No. 30 at 2.)  As will become evident, the court

1   does not rely on the exhibit attached to the Foster declaration in resolving the pending motions.

2   Therefore, the public interest in access to those materials is minimal.  *Lesnik v. Eisenmann SE*,

3   No. 16-cv-01120-LHK, 2021 WL 2093062, at *2 (N.D. Cal. Feb. 12, 2021) (finding the public

4   interest in access to materials to be minimal where those materials were not relied upon by the

5   court).  As to the exhibits attached to the Hoppin declaration, the court observes that the exhibits

6   contain personal information such as assignors' names, addresses, phone numbers, and email

7   addresses.  "The Ninth Circuit has held that compelling reasons exist to keep personal

8   information confidential to protect an individual's privacy interest and to prevent exposure to

9   harm or identity theft."  *Activision Publ'g, Inc. v. EngineOwning UG*, No. 2:22-cv-00051-MWF-

10  JC, 2023 WL 2347134, at *1 (C.D. Cal. Feb. 27, 2023) (granting the plaintiff's motion to seal

11  personal information such as names and email addresses) (citing *Kamakana*, 447 F.3d at 1184);

12  *see also Hadley v. Kellogg Sales Co.*, No. 16-cv-04955-LHK, 2018 WL 7814785, at *3 (N.D.

13  Cal. Sept. 5, 2018) (finding that compelling reasons exist to seal information such as phone

14  numbers and addresses).  Additionally, plaintiff's request as to these exhibits is narrowly tailored

15  to seeking only redaction of this personal information.  *Arouh*, 2024 WL 4800676, at *2 (finding

16  that redactions of only personal information were narrowly tailored); *cf. Yates v. Cheeseburger

17  Restaurants, Inc.*, No. 2:22-cv-01081-DAD-DB, 2023 WL 4747431, at *3 (E.D. Cal. July 25,

18  2023) (noting that requests to seal must be narrowly tailored and that blanket sealing of a

19  document is inappropriate where redactions would protect the sealable information).

20          Accordingly, the court will grant plaintiff's request to seal.

21  **B.      Personal Jurisdiction As To Defendants St. George and Litz[5]**

22          Defendants St. George and Litz argue that plaintiff has not shown that this court has

23  personal jurisdiction over them.  (Doc. No. 16 at 15–26.)  Plaintiff responds that defendants'

24  /////

25  /////

26  /////

27  _____

28  [5]  Throughout this section of this order, the court refers to defendants St. George and Litz as "defendants."

1    contacts with the Eastern District of California are sufficient for this court to exercise specific

2    personal jurisdiction.[6]  (Doc. No. 26 at 13–23.)

3         In determining whether a court has specific jurisdiction over a non-resident defendant, the

4    Ninth Circuit employs the following three-prong test:

> (1)   The non-resident defendant must purposefully direct his
> activities or consummate some transaction with the forum or resident
> thereof; or perform some act by which he purposefully avails himself
> of the privilege of conducting activities in the forum, thereby
> invoking the benefits and protections of its laws;
>
> (2)   The claim must be one which arises out of or relates to the
> defendant's forum-related activities; and
>
> (3)   The exercise of jurisdiction must comport with fair play and
> substantial justice, i.e. it must be reasonable.

11   *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Schwarzenegger v. Fred Martin*

12   *Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)); *see also Herbal Brands, Inc. v. Photoplaza, Inc.*,

13   72 F.4th 1085, 1090 (9th Cir. 2023).  "The plaintiff bears the burden of meeting the first two

14   prongs while the defendant shoulders the burden on the final prong." *Davis v. Cranfield*

15   *Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023).

16        1.    First Prong — Purposeful Availment or Purposeful Direction

17        "Under the first prong of our three-part analysis, to be subject to specific jurisdiction the

18   defendant must purposefully direct its activities toward the forum state, purposefully avail itself

19   of the privileges of conducting activities there, or engage in 'some combination thereof.'"

20   *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088 (9th Cir. 2023).  Previously, the

21   undersigned has applied a purposeful availment analysis "in suits sounding in contract" and a

22   purposeful direction analysis "in suits sounding in tort." *Glazer v. Priv. Residences At Ontario*

23   *Place Condo. Ass'n*, No. 2:21-cv-01770-DAD-DB, 2023 WL 1767739, at *5 (E.D. Cal. Feb. 3,

24   2023).  However, the Ninth Circuit has since clarified that, while these two forms of analysis

25

26   [6]  Plaintiff also argues in passing that defendant St. George may be subject to general personal
     jurisdiction because the corporation Vertex has its principal place of business in the Eastern
27   District of California and that corporation is merely an alter-ego of defendant St. George.  (Doc.
     No. 26 at 18.)  The court need not and does not consider this argument because it concludes that
28   plaintiff has established specific personal jurisdiction for separate reasons.

1  generally apply to the two distinct kinds of claims, "this line is [not] a hard-and-fast rule.  Rather,

2  our cases do not impose a rigid dividing line between these two types of claims."  *Davis*, 71 F.4th

3  at 1162 (internal quotation marks omitted); *see also Baton v. Ledger SAS*, 740 F. Supp. 3d 847,

4  886 (N.D. Cal. 2024) ("Nonetheless, courts often look to both tests for all types of claims.").

5  Accordingly, the court will apply both the purposeful direction and purposeful availment tests in

6  evaluating the first prong.

7        First, as to the purposeful availment analysis, plaintiff argues in conclusory fashion that

8  defendants have "voluntarily derived some benefit from their interstate activities."  (Doc. No. 26

9  at 19.)  Plaintiff appears to contend, citing only an out-of-circuit decision, that defendants

10  transferred the allegedly fraudulently-obtained funds into a bank located in California.  (*Id.*)

11  However, a review of the FAC reveals no allegations regarding any such transfer and plaintiff

12  offers no evidence of such a transfer in their opposition to the motion to dismiss or declarations

13  attached thereto.  Accordingly, the court rejects plaintiff's argument that defendants purposefully

14  availed themselves of the benefits of the forum because plaintiff has simply made no allegations

15  in this regard or offered any evidence to this effect.

16        As to purposeful direction, plaintiff argues that defendants St. George and Litz acted

17  intentionally by jointly operating Vertex and FileTAO and surreptitiously publishing a malicious

18  update on PyPI to steal TAO.  (Doc. No. 26 at 20.)  Plaintiff contends that these acts were

19  expressly aimed at California because defendants launched a "broad cyber-attack against all

20  Python-based Bittensor participants" which included some California residents and had made

21  other contacts with California through Vertex, FileTAO, and defendant Brewer.  (*Id.* at 21.)

22  Defendants argue that plaintiff has failed to specifically allege any acts that defendants St. George

23  and Litz have committed and, moreover, that plaintiff's allegations fail to show that defendants

24  expressly targeted California.  (Doc. No. 34 at 6–9, 10–12.)

25        "Where allegedly tortious conduct takes place outside the forum and has effects inside the

26  forum," courts in the Ninth Circuit examine purposeful direction by using the three-part "effects"

27  test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).  *AMA Multimedia,*

28  *LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020), *overruled on other grounds by Briskin v.*

13

1    *Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025).  This "*Calder* effects test" asks whether the

2    defendant is alleged to have (1) committed an intentional act (2) that was expressly aimed at the

3    forum state and (3) that caused harm the defendant knew was likely to be suffered in the forum

4    state.  *Fred Martin Motor Co.*, 374 F.3d at 803.

5            Under the first element of the test, "[t]he meaning of the term 'intentional act' . . . is

6    essentially the same as in the context of intentional torts; namely, the defendant must act with the

7    'intent to perform an actual, physical act in the real world.'"  *Picot*, 780 F.3d at 1214 (quoting

8    *Fred Martin Motor Co.*, 374 F.3d at 806).  Defendants St. George and Litz argue that plaintiff has

9    only alleged in conclusory fashion that they committed any intentional act.  (Doc. No. 16 at 17–

10   18.)  In this regard, defendants argue that, though plaintiff has alleged that a cyberattack occurred,

11   it has failed to allege that defendants are responsible for that cyberattack.  (*Id.* at 18.)  Defendants

12   provide the sworn declaration of defendant St. George in support of this contention, in which he

13   declares that he had updated the FileTAO subnet to coincide with the 6.12.2 update from

14   Bittensor as a matter of course rather than to carry out a hack or cyberattack.  (Doc. No. 16-1 at ¶

15   13.)

16           Where, as here, plaintiff "relies solely on written materials in [its] attempt to establish

17   personal jurisdiction . . . [it] need make only a *prima facie* showing of jurisdictional facts."

18   *Brown v. Serv. Grp. of Am., Inc.*, No. 22-35107, 2022 WL 16958933, at *1 (9th Cir. Nov. 16,

19   2022) (internal quotation marks omitted).  "Uncontroverted allegations in the complaint are taken

20   as true[.]" *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023).  Though the court

21   "may not assume the truth of allegations in a pleading which are contradicted by affidavit, [it

22   must] resolve factual disputes in the plaintiff's favor." *Mavrix Photo, Inc. v. Brand Techs., Inc.*,

23   647 F.3d 1218, 1223 (9th Cir. 2011) (internal quotation marks and citations omitted).

24           Here, plaintiff has met its burden of making a *prima facie* showing that defendants

25   committed an intentional act.  Plaintiff has alleged that defendants St. George and Litz created

26   FileTAO in December 2023 with Opentensor's support.  (Doc. No. 14 at ¶ 41.)  Plaintiff also

27   alleges that defendant Litz was extensively involved in the operation of FileTAO and that

28   defendant St. George had, in December 2023, "planned to leave Opentensor to run FileTAO full-

1    time." (*Id.* at ¶¶ 41, 42.)  Plaintiff further alleges that defendant St. George exercised enough

2    control over the codebase of FileTAO at the time of the attack that shortly thereafter he

3    "deregistered" FileTAO and deleted its codebase.  (*Id.* at ¶ 44.)  Plaintiff alleges that FileTAO

4    required its participants to download and install Opentensor's version 6.12.2, which was the

5    version used in the Bittensor attack.  (*Id.* at ¶ 44.)  Plaintiff has also provided the sworn

6    declaration of Paul Swaim, who worked as the Chief Information Officer for Opentensor, to rebut

7    defendants' assertions that the update of FileTAO which required downloading version 6.12.2

8    was an update as a matter of course.[7]  (Doc. No. 29 at ¶¶ 1–3.)  Specifically, Mr. Swaim declares

9    that version 6.12.2 made no "breaking changes"—changes that would have affected the

10   compatibility of FileTAO immediately—and that a same-day update was not technically or

11   practically necessary as a result.  (*Id.* at ¶¶ 12–14.)  Further, Mr. Swaim declares that this same-

12   day update was unusual compared to FileTAO's typical practice where updates were usually

13   reserved for several days when non-breaking changes were implemented.  (*Id.* at ¶ 16.)

14   Moreover, plaintiff alleges that a wallet associated with defendant Litz received proceeds from

15   /////

16   /////

17   /////

18   _____

19   [7]  Defendants have objected to various paragraphs within Mr. Swaim's declaration.  (Doc. No.
     35.)  Many of these objections are based on Mr. Swaim not demonstrating that he has personal
20   knowledge of the practices of Opentensor and Bittensor.  (Doc. No. 35 at 9–12.)  The court finds
     that Mr. Swaim has laid an adequate foundation for his personal knowledge:  He declares that he
21   is the CIO of Opentensor and "coordinated and participated in Opentensor's investigation into the
     series of sophisticated cyber-attacks perpetrated against Bittensor and Bittensor participants
22   between May and July of 2024."  (Doc. No. 29 at ¶ 2); *see also In re Kaypro*, 218 F.3d 1070,
     1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position.").
23   Defendants also object to various conclusions that Mr. Swaim draws in paragraphs 12 through 14
     and 16 of his declaration, arguing that these assertions constitute improper lay opinion.  (Doc. No.
24   35 at 9–12.)  In these paragraphs, Mr. Swaim describes what version 6.12.2 of Bittensor did, how
     a same-day release of an update for a subnet was not necessary considering the practices of
25   subnet operators, and how the same-day release of version 3.0.1 for FileTAO's subnet was
     inconsistent with their previous practices.  (Doc. No. 29 at ¶¶ 12–14, 16.)  Such testimony is
26   based on Mr. Swaim's personal knowledge as Opentensor's CIO and the familiarity he declares
     he had with related subnets.  (*Id.* at ¶ 2.)  Accordingly, the court overrules defendants' objections
27   to the paragraphs of Mr. Swaim's declaration which the court relies on in this order.  The court
     overrules the remainder of defendants' objections to Mr. Swaim's declaration as moot.

28

1    the Bittensor attack which he sent to a cryptocurrency laundering service.[8]  (Doc. No. 14 at ¶ 76.)

2    Resolving factual disputes in plaintiff's favor, the court finds that plaintiff has made a *prima facie*

3    showing that defendants St. George and Litz committed an intentional act by deploying an update

4    designed to force FileTAO users to download a malicious Bittensor update.  *See WhatsApp Inc. v.*

5    *NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 669–70 (N.D. Cal. 2020) (finding that the parties did

6    not dispute that someone had sent malware through the plaintiff's servers and that the

7    uncontroverted allegation that the defendants designed a program capable of that was sufficient

8    for purposes of making a *prima facie* showing that they "retained some role in conducting the

9    intentional act").

10           Under the second element of the *Calder* effects test (whether the intentional act was

11    expressly aimed at the forum state), the focus of the court's analysis is on the "defendant's

12    contacts with the forum state itself, not the defendant's contacts with persons who reside there."

13    *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  Defendants argue in conclusory fashion that there is

14    no allegation that they directed any conduct towards California and therefore did not expressly

15    /////

16    /////

17    /////

18    /////

19

---

20    [8]  Defendants argue that plaintiff has failed to allege that there was a direct transfer between the
      wallet at issue and the Suspected Laundering Service.  (Doc. No. 16 at 12.)  In support of this
21    contention, defendants request judicial notice of what purports to be a digital ledger of every
      transaction involving the wallet at issue, which does not reflect such a direct transfer.  (Doc. No.
22    18.)  The court first observes that defendants appear to ask the court to take judicial notice of the
      contents of that ledger.  (Doc. No. 18 at 3–4.)  The court is not persuaded by defendants' cursory
23    argument that blockchains are "secured, public ledgers that cannot be modified" that the contents
      of the website defendants used to generate this ledger cannot be reasonably disputed.  *See*
24    *Hunichen v. Tonomi LLC*, No. 19-cv-00615-RAJ-MAT, 2020 WL 6875558, at *6 (W.D. Wash.
      Oct. 6, 2020) (declining to take judicial notice of blockchain evidence because its contents may
25    be subject to reasonable dispute or varying interpretation), *report and recommendation adopted*,
      2020 WL 68748889 (W.D. Wash. Nov. 23, 2020).  Accordingly, the court will deny defendants'
26    request for judicial notice.  Moreover, as the court discusses below in the context of defendants'
      motion seeking the imposition of sanctions, plaintiff alleges that the transfer occurred through a
27    series of transactions.  Therefore, defendants' argument in this regard is not well-taken.

28

aim at that forum.[9]  (Doc. No. 16 at 18–19.)  In their reply, defendants clarify that their argument

is that plaintiff's contention that defendants St. George and Litz launched the Bittensor attack is

conclusory and therefore any aiming of that attack at California cannot be attributed to them.

(Doc. No. 34 at 10–11.)  The court has already rejected defendants' contention in this regard in

concluding that plaintiff has made a *prima facie* showing that defendants St. George and Litz did

commit the intentional act of deploying an update to coincide with the Bittensor attack.

Moreover, to the extent defendants St. George and Litz argue that their actions were not directed

against California specifically (Doc. No. 16 at 19), the court is unpersuaded.  The Ninth Circuit

has rejected the contention that express aiming "require[s] some sort of differential treatment of

the forum state."  *Briskin*, 135 F.4th at 756–58 ("Pre-internet, there would be no doubt that the

California courts would have specific personal jurisdiction over a third party who physically

entered a Californian's home by deceptive means to take personal information from the

Californian's files[.]"); *see also Williams v. Pac. Sunwear of Cal. LLC*, No. 24-cv-02015-PHX-

JJT, 2024 WL 4626541, at *7 (D. Ariz. Oct. 30, 2024) ("[I]t is enough to conclude that the actual

operation of the alleged spyware occurred in Arizona and thereby vests jurisdiction in this

forum.").  Plaintiff has alleged that defendants participated in the Bittensor attack and that,

because the Bittensor attack targeted Californians' information, the Bittensor attack targeted

---

[9]  Defendants also argue that plaintiff has failed to allege that any harm took place in California at all.  (Doc. No. 16 at 19.)  Though such an allegation is missing from the FAC, attorney Margaret Hoppin, one of the attorneys representing plaintiff in this case, has declared that two of plaintiff's assignors of claims are California residents who had assets stolen from them in California.  (Doc. No. 27 at ¶¶ 4, 5.)  Defendants object to attorney Hoppin's declaration, stating that the addresses of assignors contained within the attached exhibits are inadmissible hearsay.  (Doc. No. 35 at 15–16.)  "Courts have held that hearsay may be considered for purposes of determining personal jurisdiction, provided it bears circumstantial indicia of reliability."  *Doe v. Aylo Glob. Ent. Inc.*, No. 23-cv-07488-MWF-AGR, 2024 WL 4599539, at *9 (C.D. Cal. June 24, 2024) (cleaned up).  Here, the addresses in the exhibits attached to attorney Hoppins' declaration are found in a complaint form to the International Crime Complaint Center, which indicates that the assignors were reporting an incident and included their addresses.  The court finds that this is a sufficient circumstantial indicia of reliability and accordingly overrules defendants' hearsay objection for the purposes of determining personal jurisdiction.  The court also overrules defendants' objection that these documents are not authenticated:  attorney Hoppins declares that they are "true and correct cop[ies]" and defendants have not argued that attorney Hoppins lacks personal knowledge to be able to authenticate these documents.  *Fernandez v. Tox Corp.*, 677 F. Supp. 3d 1089, 1099 n.4 (C.D. Cal. 2023).

California.  No more is required.  *See WhatsApp Inc.*, 472 F. Supp. 3d at 673 (noting that, while allegations that a defendant targeted an individual is insufficient to confer specific jurisdiction in the forum where the harm occurred, allegations that electronic code was sent to a forum intentionally is sufficient to demonstrate express aiming at the forum); *see also Will Co. v. Lee*, 47 F.4th 917, 926 (9th Cir. 2022) ("A defendant causes harm in a particular forum when the bad acts that form the basis of the plaintiff's complaint occur in that forum.  If a Defendant's actions cause harm in multiple fora, jurisdiction is proper in any forum where a sufficient amount of harm occurs[.]") (internal quotation marks and citations omitted), *overruled in part on other grounds by Briskin*, 135 F.4th 739.  Accordingly, the court finds that plaintiff has met its burden as to the second prong of the *Calder* effects test.

As for the third and final element of the *Calder* effects test concerning the sufficiency of allegations of harm, "'something more' than mere foreseeability" is required.  *Fred Martin Motor Co.*, 374 F.3d at 804–05 (quoting *Bancroft & Masters*, 223 F.3d 1082, 1087 (9th Cir. 2000)).  An action taken outside the forum state with foreseeable effects within the forum state does not *per se* give rise to specific personal jurisdiction.  *Id.*  As the Supreme Court has made clear, "mere injury to a forum resident is not a sufficient connection to the forum.  Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."  *Walden*, 571 U.S. at 290.  Accordingly, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Id.*

Defendants argue in conclusory fashion that this element is not met because plaintiff has not alleged that defendants knew that as a result of their wrongful conduct harm was likely to be suffered in California.  (Doc. No. 16 at 19.)  In their reply, defendants again argue that plaintiff has failed to plausibly allege that defendants St. George and Litz contributed to the Bittensor attack, an argument which, as noted, the court rejected above.  (Doc. No. 34 at 11.)  Moreover, the court has also concluded that the Bittensor attack occurred at least in part in California based on the attack on individuals within California.  *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 741 (N.D. Cal. 2023) ("With regard to the third element, '[a] defendant causes harm in a

1    particular forum when the "bad act" that form the basis of the plaintiff's complaint occur in that

2    forum.  Here, . . ., Home Depot was aware that it was recording its online chat conversations with

3    customers, which could foreseeably cause harm in California.") (quoting *Will Co. v. Lee*, 47 F.4th

4    917, 922 (9th Cir. 2022), *overruled in part on other grounds by Briskin*, 135 F.4th 739; *see also*

5    *Williams*, 2024 WL 4626541, at *6 (holding that an intentional cyberattack occurs inside the

6    forum where the victim is located because otherwise "a cyber-thief could deliberately infect a

7    person's computer . . . and then evade personal jurisdiction simply because the tortfeasor sent the

8    malware from outside the victim's forum without knowledge of where the victim was physically

9    located.").  Accordingly, the court concludes that plaintiff's allegations are sufficient to make the

10   required *prima facie* showing that defendants' alleged actions caused harm that they knew was

11   likely to be suffered in California.  Therefore, plaintiff has at this time met its burden as to the

12   purposeful direction element of specific jurisdiction.

13         2.       Claim Arises Out of or Relates to Forum-Related Activities

14         Plaintiff has the burden to show that its claims "arise out of or relate to" defendants'

15   contacts with California.  *Impossible Foods Inc.*, 80 F.4th at 1091.  "The Supreme Court

16   announced in [*Ford Motor Company v. Montana Eighth Judicial District Court*, 592 U.S. 351

17   (2021)] that arise out of and relate to are alternatives:  for a claim to arise out of a defendant's

18   forum contacts requires causation, while a claim can relate to those contacts, even absent

19   causation, where, for example, a company serves a market for a product in the forum state and the

20   product malfunctions there."  *Yamashita*, 62 F.4th at 504–05 (internal quotation marks and

21   ellipses omitted).

22         Here, defendants again argue that plaintiff has failed to adequately allege that defendants

23   Litz and St. George participated in the Bittensor attack and therefore plaintiff has not alleged a

24   harm which arose out of or related to defendants' contacts with California.  (Doc. No. 16 at 20–

25   21.)  The court has already rejected this argument with respect to whether plaintiff has adequately

26   alleged that defendants committed an intentional act.  Plaintiff alleges that defendants

27   intentionally deployed an update to FileTAO to require participants in that subnet to install

28   malicious software.  (Doc. No. 14 at ¶¶ 44, 85–87.)  Plaintiff has also presented a declaration, as

19

described above, rebutting defendants' averment that the update was benign by noting how the update was unusual in its timing. (Doc. No. 29.) Defendants argue in reply that plaintiff has not alleged that the harm caused to their assignors was due to the FileTAO update, so the harm could not arise out of defendants' purported contacts with California. (Doc. No. 34 at 9–10.) However, plaintiff's claims regarding the exfiltration of private keys from its assignors arise out of the deployment of the FileTAO and Bittensor updates since Bittensor attack was accomplished through those updates. *See Alhathloul v. DarkMatter Grp.*, — F. Supp. 3d —, No. 3:21-cv-01787-IM, 2025 WL 2320474, at *14 (D. Or. 2025) (finding that an injury to the plaintiff arose out of the defendants' "tortious exfiltration of data" because there was a direct nexus between that exfiltration and the injury). Moreover, the injuries alleged by plaintiff, namely that the assignors lost assets due to extracting of personal data, are the type of injury that would be caused by defendants' deployment of an update designed to install malicious software on users' devices. Accordingly, those injuries are related to defendants' contacts with California. *See Briskin*, 135 F.4th at 760 ("Briskin's claims also 'relate to' Shopify's California contacts because Briskin alleges the kind of injury that would 'tend to be caused' by Shopify's contacts with California merchants and consumers."); *see also Alhathloul*, 2025 WL 2320474, at *14 (finding that extraction of personal data from a phone is the kind of contact that would create privacy related injuries). Plaintiff has therefore met its burden on the second prong of the specific jurisdiction analysis.

### 3.    Fair Play and Substantial Justice

"Once Plaintiff satisfies the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable[,]" that is would not comport with fair play and substantial justice. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023) (internal quotation marks omitted). The Ninth Circuit has identified a seven-factor balancing test to evaluate the reasonableness of exercising personal jurisdiction:

> (1) [T]he extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018).

As to the first factor, "[t]he purposeful interjection factor in the reasonableness analysis is analogous to the purposeful direction factor." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 984 (9th Cir. 2021) (internal quotation marks omitted). Because the court has already concluded that plaintiff has advanced allegations sufficient for a *prima facie* showing that defendants purposefully directed their actions towards California, the court concludes for the same reasons that this factor weighs in favor of the exercise of personal jurisdiction. *See Briskin*, 135 F.4th at 761 (finding that the purposeful interjection factor weighed in favor of the exercise of jurisdiction based on the finding that the defendant purposefully directed business activities to the forum); *see also WhatsApp Inc.*, 472 F. Supp. 3d at 676 ("Because plaintiffs demonstrated purposeful direction, defendants injected themselves into the forum state.").

As to the second factor, defendants argue that the cost of litigation would be a significant burden because they reside in New York and Missouri. (Doc. No. 16 at 23.) Plaintiff argues that advances in technology mitigate this burden. (Doc. No. 26 at 23.) It is clear that requiring defendants St. George and Litz to litigate in California rather than their states of residence will place some burden upon them. *See, e.g., Electric Solidus, Inc. v. Proton Mgmt. Ltd.*, No. 2:24-cv-08280-MWC-E, 2025 WL 1090941, at *11 (C.D. Cal. Apr. 9, 2025) (finding that the burden factor weighed in the defendant's favor because litigating in another state posed a significant burden). Nevertheless, "modern advances in communications and transportation have significantly reduced the burden of litigating in another country" or state. *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988); *see also Aero L. Grp.*, 905 F.3d at 608 (finding that the burden factor only weighed slightly in defendants' favor because of modern advances in communication and technology); *Shirokov v. Ardatovskiy*, No. 25-cv-02701-EMC, 2025 WL 2042224, at *3 (N.D. Cal. July 21, 2025) (finding that there is some burden imposed by requiring foreign defendants to litigate in the United States but that that burden is reduced by

1  technology).  Accordingly, the court concludes that though there is some burden placed on

2  defendants by exercising jurisdiction over them, this factor carries only slight weight.

3          As to the third factor, defendants argue without citation to authority that their home states

4  have a greater interest in regulating their behavior because they have not "committed any

5  misconduct in California or even directed any tortious activity at this forum[.]" (Doc. No. 16 at

6  23.)  The court has already rejected defendants' contention in this regard as discussed above and,

7  therefore, consideration of this factor does not weigh against the exercise of jurisdiction.

8          As to the fourth factor, defendants confusingly argue that California has no interest in this

9  dispute because plaintiff is neither incorporated nor headquartered in California.  (Doc. No. 16 at

10  23–24.)  Defendants are simply mistaken in this regard:  Plaintiff brings this action on behalf of

11  its assignors, some of whom are residents of California.  (Doc. Nos. 14 at ¶ 11; 26 at 23.)

12  "California maintains a strong interest in providing an effective means of redress for its residents

13  tortiously injured in California." *WhatsApp Inc.*, 472 F. Supp. 3d at 677; *see also Elec. Solidus,*

14  *Inc.*, 2025 WL 1090941, at *11 (finding that the fourth factor weighed heavily in the plaintiff's

15  favor because the defendant allegedly harmed the plaintiff in the forum state).  Consideration of

16  this factor then weighs strongly in favor of the exercise of jurisdiction.

17          As to the fifth factor, defendants again argue that the FAC fails to allege that harm

18  occurred in California.  (Doc. No. 16 at 24–25.)  "The fifth factor (the most efficient judicial

19  resolution of the dispute) primarily focuses on the location of the evidence and the witnesses."

20  *Alcon 3PL, Inc. v. Sun Grp. Partners LLC*, No. 20-cv-02523-RSWL-PVC, 2023 WL 2959141, at

21  *7 (C.D. Cal. Apr. 13, 2023).  Considering the digital nature of the allegations at issue in this

22  case, it is unclear at this point in the litigation where relevant evidence may be located.

23  Nevertheless, the court observes that at least some of plaintiff's assignors are located in

24  California, as is defendant Brewer, suggesting that it is at least as reasonably efficient to exercise

25  jurisdiction in this forum as in the states where defendants St. George and Litz reside.  *See Aero*

26  *L. Grp.*, 905 F.3d at 609 (observing that because witnesses resided in several different fora the

27  factor was likely neutral).  Accordingly, the court finds that consideration of this factor is neutral

28  as to the exercise of jurisdiction.

As to the sixth factor, defendants argue that California does not provide a convenient forum for plaintiff to pursue relief in because the majority of plaintiff's claims are brought under federal law.  (Doc. No. 16 at 25.)  Plaintiff responds by stating in conclusory fashion that California is a more efficient forum than the alternative fora of Missouri or New York but provides no argument as to why this is the case.  (Doc. No. 26 at 23.)  The court concludes that consideration of this factor weighs neutrally as to the exercise of jurisdiction, while recognizing that this factor is generally not given much weight.  *Aero L. Grp.*, 905 F.3d at 609; *see also Ziegler v. Indian River County*, 64 F.3d 470, 476 (9th Cir. 1995) (observing that neither the Ninth Circuit nor the Supreme Court have given much weight to this inconvenience to plaintiff factor).

Finally, as to the seventh factor, defendants argue that they are subject to general jurisdiction in their home states and that those states provide a suitable alternative forum.  (Doc. No. 16 at 26.)  "The plaintiff bears the burden of proving the unavailability of an alternative forum."  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993).  Plaintiff makes no argument as to why alternative fora are not suitable in this case.  The court therefore finds that consideration of this factor weighs against the court exercising jurisdiction.

The Ninth Circuit has emphasized "the heavy burden on both domestic and foreign defendants in proving a 'compelling case' of unreasonableness to defeat jurisdiction."  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002).  Here, the court has concluded that only two of the seven reasonableness factors weigh in defendants' favor and against the exercise of jurisdiction.  This is insufficient to establish a compelling case of unreasonableness.  *See, e.g. Elec. Solidus, Inc.*, 2025 WL 1090941, at *12 (finding that three factors weighing in the defendant's favor was insufficient to present a compelling case of unreasonableness); *see also WhatsApp Inc.*, 472 F. Supp. 3d at 677 ("In sum, some factors tip in defendants' favor and others tip in plaintiffs' favor.  The Ninth Circuit has indicated that, in such an instance, a defendant has not carried its burden to present a compelling case that exercising jurisdiction would be unreasonable.") (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003)); *Alhathloul*, 2025 WL 2320474, at *17 (finding that the defendant did

/////

23

1    not present a compelling case of unreasonableness where only the third and fifth factors weighed

2    against exercising jurisdiction).

3          For these reasons, the court will deny the motion to dismiss the FAC for lack of personal

4    jurisdiction pursuant to Rule 12(b)(2) brought on behalf of defendants St. George and Litz's.

5    **C.      Failure to State a Claim**

6          Defendant Brewer moves to dismiss all claims brought against him in the FAC pursuant to

7    Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 15 at 10.)  Additionally, defendants St.

8    George and Litz move to dismiss all claims against them in the FAC, largely relying on the

9    arguments raised in defendant Brewer's motion.  (Doc. No. 16 at 26.)  Because defendants St.

10    George and Litz indicate that they "expressly join in, and incorporate by reference" defendant

11    Brewer's motion to dismiss, the court will refer to these arguments in support of dismissal as

12    being made by defendants.  (*Id.* at 2.)

13          1.      <u>Violation of the CFAA (Claim 1)</u>

14          Defendants move to dismiss plaintiff's claim for violation of the CFAA, arguing that:  (1)

15    plaintiff lacks standing to sue under the CFAA because it was improperly assigned its claims; (2)

16    it is not alleged that plaintiff's assignors suffered any cognizable loss; (3) the FAC fails to

17    plausibly allege that defendants used malware to improperly access a protected computer; and (4)

18    the electronic wallets that were purportedly targeted are not computers within the definition of the

19    CFAA.  (Doc. No. 15 at 22–27.)

20          The court turns first to defendants' argument that the losses identified by plaintiff in the

21    FAC, namely the misappropriated cryptocurrency and the investigation costs to trace that

22    cryptocurrency, are not cognizable losses under the CFAA.  (Doc. No. 15 at 23–25.)  Plaintiff

23    responds, contending that the loss of cryptocurrency is itself a cognizable loss and that the costs

24    incurred in tracing the cryptocurrency thereafter was also a loss attributable to a violation of the

25    CFAA.  (Doc. No. 24 at 22–26.)

26          "[T]he CFAA is an anti-hacking statute, not an expansive misappropriation statute.  The

27    statute's loss definition—with its references to damage assessments, data restoration, and

28    interruption of service—clearly limits its focus to harms caused by computer intrusions, not

1     general injuries unrelated to the hacking itself." *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253,

2     1263 (9th Cir. 2019) (internal quotation marks and citations omitted). In the CFAA

3     context,"[c]ourts have interpreted 'loss' to mean 'the types of costs . . . related to fixing a

4     computer.'" *Nowak v. Xapo, Inc.*, No. 5:20-cv-03643-BLF, 2020 WL 6822888, at *4–5 (N.D.

5     Cal. Nov. 20, 2020) (quoting *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475

6     (S.D.N.Y. 2004), *aff'd*, 166 F. App'x 559 (2d Cir. 2006)). Indeed, the Supreme Court has noted

7     that the CFAA's definitions "are ill fitted . . . to remediating 'misuse' of sensitive information[.]"

8     *Van Buren v. United States*, 593 U.S. 374, 392 (2021); *see also Delacruz v. State Bar of Cal.*, No.

9     16-cv-06858-BLF-SVK, 2017 WL 7310715, at *6 (N.D. Cal. June 21, 2017) ("In sum, the CFAA

10    creates the right to recover damages and losses related to a computer or system, not damages that

11    flow from the use of unlawfully obtained information."), *report and recommendation adopted*,

12    2017 WL 3129207 (N.D. Cal. July 24, 2017).

13        Here, plaintiff alleges that the Bittensor attack was carried out by having users download

14    "malicious code [that] would secretly intercept their private wallet keys and send those keys to

15    opentensor.io." (Doc. No. 14 at ¶ 46.) Subsequently, the attackers "used the private wallet keys"

16    to extract cryptocurrency from users' private wallets. (*Id.* at ¶ 51.) District courts have held that

17    similar allegations, that an attacker unlawfully obtained information and then subsequently used

18    that information to cause a loss, fail to state a cognizable claim under the CFAA. *See Fraser v.*

19    *Mint Mobile, LLC*, No. 22-cv-00138-WHA, 2022 WL 1240864, at *5 (N.D. Cal. Apr. 27, 2022)

20    ("The only damage or loss that Fraser cites in his complaint, however, is the theft of his

21    cryptocurrency, which does not constitute loss related to a computer or system. Rather, the loss

22    here flows from the use of the unlawfully obtained information to hack Fraser's Ledger

23    account."); *see also Nowak*, 2020 WL 6822888, at *4 (finding that the loss of cryptocurrency was

24    not a cognizable loss under the CFAA). Because plaintiff has alleged the loss of the assignors'

25    /////

26    /////

27    /////

28    /////

1  cryptocurrency as a subsequent act after the initial attack, the court concludes that the loss of that

2  cryptocurrency is not a cognizable loss under the CFAA.[10]

3        Plaintiff also argues that the investigation costs associated with identifying the attackers

4  constitute a cognizable loss under the CFAA.  (Doc. No. 24 at 23–24.)  However, the Supreme

5  Court has explained that loss under the CFAA is focused "on technological harms—such as the

6  corruption of files—of the type unauthorized users cause to computer systems and data." *Van*

7  *Buren*, 593 U.S. at 392.  Thus, courts have found that investigations taken to respond to a hack in

8  order to prevent further intrusions are cognizable losses under the CFAA.  *See Facebook, Inc. v.*

9  *Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016) (holding that the internal investigation

10  by the plaintiff's employees to respond to an attack was a cognizable loss under the CFAA); *see*

11  *also WalkMe Ltd. v. Whatfix, Inc.*, No. 23-cv-03991-JSW, 2024 WL 3364019, at *6–7 (N.D. Cal.

12  July 9, 2024) ("[W]hen courts have found [sic] when a plaintiff premises damage or loss from

13  responding to an offense or from doing a damage assessment was sufficient to show loss under

14  the CFAA, the underlying facts show that the plaintiff took actions to *prevent* the type of

15  intrusion the CFAA was enacted to prevent.") (emphasis added); *Moonlight Mountain Recovery,*

16  *Inc. v. McCoy*, No. 1:24-cv-00012-BLW, 2024 WL 4027972, at *4–5 (D. Idaho Sept. 3, 2024)

17  (finding that the costs incurred in investigating a violation and implementing remedial measures

18  to prevent a future violation were cognizable losses under the CFAA).  However, investigatory

19  costs incurred only to assess damages have been found not to be cognizable losses under the

20  CFAA.  *See X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 983–84 (N.D.

21  Cal. 2024) (finding that investigatory costs designed to assess the plaintiff's damages were not

22  cognizable losses under the CFAA); *Nowak*, 2020 WL 6822888, at *5 (noting that costs

23  associated with hiring an investigative firm to trace stolen funds were likely not a cognizable loss

24  under the CFAA); *Fraser v. Mint Mobile, LLC*, No. 22-cv-00138-WHA, 2022 WL 2391000, at *2

25

26  [10]  Plaintiff argues in the alternative that its reimbursement of its assignors for the value of their
stolen cryptocurrency is a cognizable loss under the CFAA.  (Doc. No. 24 at 23.)  Plaintiff

27  provides no authority in support of this assertion.  For the same reasons that the loss of the
cryptocurrency itself is not a cognizable loss under the CFAA, reimbursement of that

28  cryptocurrency is also not a cognizable loss under the CFAA.

1    (N.D. Cal. July 1, 2022) (finding that the plaintiff's proposed amendment to his complaint adding

2    allegations that the plaintiff hired an expert to trace stolen cryptocurrency would fail to allege a

3    cognizable loss under the CFAA).

4         Here, plaintiff's allegations regarding investigatory costs describe its investigation as

5    designed to "identify [the Bittensor attack's] perpetrators, and to trace and recover the stolen

6    assets."  (Doc. No. 14 at ¶ 99.)  As described above, such investigatory costs are not cognizable

7    losses under the CFAA because they are undertaken only to assess damages.  Accordingly, the

8    court rejects plaintiff's argument that its investigatory costs are a cognizable loss under the

9    CFAA.

10        Because plaintiff has failed to allege a cognizable loss under the CFAA, the court will

11   grant defendants' motion to dismiss the FAC's first cause of action.  Having reached this

12   conclusion, the court need not consider defendants' other arguments in support of dismissal of

13   this cause of action.

14        2.    Violation of the Wiretap Act (Claim 2)

15        Defendants next move to dismiss plaintiff's claim for violation of the Wiretap Act on the

16   following grounds:  (1) plaintiff lacks standing to bring a civil action under the Wiretap Act; (2)

17   plaintiff has failed to allege facts that plausibly support a claim that defendants violated the

18   Wiretap Act; and (3) plaintiff has only alleged that software was used in the Bittensor attack

19   which is not a "device" within the meaning of the Wiretap Act.  (Doc. No. 15 at 27–30.)  The

20   court considers each of these arguments below.

21             a.    *Assignability of Wiretap Act Claims*

22        Defendants assert that plaintiff lacks standing to bring a claim under the Wiretap Act

23   because such claims cannot be assigned.  (Doc. No. 15 at 27.)  In support of this contention,

24   defendants cite *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005), in

25   which the Ninth Circuit held that claims under the Copyright Act—not the Wiretap Act—could

26   not be brought by a party which merely purchased the right to sue from an aggrieved party.  In

27   opposition, plaintiff notes that other courts have permitted the assignment of claims under the

28   Wiretap Act.  (Doc. No. 24 at 26–27); *see also Malikyar v. Sramek*, No. 07-cv-03533-WHA,

1    2008 WL 4891020, at *4 (N.D. Cal. Nov. 12, 2008) (finding that the purchaser of a claim brought

2    under the Wiretap Act was a "real party in interest" who could maintain the civil action).[11]

3        In *Silvers*, the Ninth Circuit considered the language in 17 U.S.C. § 501(b) which states

4    that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to

5    institute an action for any infringement of that particular right committed while he or she is the

6    owner of it. 17 U.S.C. § 501(b). The court concluded that the limitation of who was entitled to

7    sue to the actual owner of the exclusive right at issue, as well as the durational limitation that

8    required the violation to occur while the party was the owner of that right, prevented the

9    assignability of a claim under the Copyright Act. *Silvers*, 402 F.3d at 885. Here, the Wiretap Act

10    provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed,

11    or intentionally used in violation of this chapter may in a civil action recover[.]" 18 U.S.C. §

12    2520. There is no requirement within that statute that the person who may sue must be an owner

13    of a particular right, nor is there a durational requirement. Defendants have identified no

14    authority to support their conclusory assertion that claims under the Wiretap Act may not be

15    assigned, and the court has been unable to locate any such authority. As such, the court

16    concludes that a claim under the Wiretap Act may be assigned and rejects defendants' argument

17    to the contrary. *See Malikyar*, 2008 WL 4891020, at *4.

18                    b.    *Plausible Allegations of Violation of Wiretap Act*

19        Defendants next argue that plaintiff has failed to plausibly allege both that they were the

20    attackers behind the Bittensor attack and that they intentionally intercepted communications as

21    required to state a claim under the Wiretap Act. (Doc. Nos. 15 at 28; 16 at 28, 31.) Defendants

22    do not argue that the Bittensor attack, if plausibly alleged, would not constitute intentional

23    interception of electronic communications. Accordingly, the court addresses only whether

24    plaintiff has plausibly alleged with particularity that defendants committed the Bittensor attack.

25    /////

26    _____

27    [11]  Though the court in *Malikyar* did not explicitly cite the Wiretap Act as the basis for the cause
     of action it addressed, a prior order in the same action reveals that the action was brought
     pursuant to that statute. *Malikyar v. Sramek*, No. 07-cv-03533-WHA, 2007 WL 3343159, at *1
28    (N.D. Cal. Nov. 8, 2007).

Defendants contend that plaintiff has failed to allege a civil conspiracy or alternatively individual actions that would constitute tortious acts.  (Doc. No. 15 at 18–22.)  Here, as discussed above, plaintiff has alleged that each of the individual defendants participated in the Bittensor attack.  Regarding defendants St. George and Litz, the court incorporates its analysis set forth above regarding whether plaintiff has alleged that they committed a direct act.  The court finds that those same allegations support a plausible inference that defendants St. George and Litz were participants in the Bittensor attack.  The court also observes that plaintiff has alleged that defendant St. George was one of only six people who had a "proprietary API token" that permitted him to upload Bittensor software updates to PyPI.  (Doc. No. 14 at ¶ 27.)  That allegation provides some support for plaintiff's contention that defendant St. George had the ability to upload malicious code to Bittensor.  Regarding defendant Brewer, plaintiff has alleged that he created FileTAO, which deployed the update that required the malicious code to be downloaded, and was "intimately familiar with Bittensor infrastructure and code."[12]  (*Id.* at ¶¶ 36, 41.)  Plaintiff has also alleged that defendants Brewer and Litz used an Ethereum wallet that transferred assets taken in the Bittensor attack to a laundering service and that, shortly thereafter, significant funds were deposited into a separate Ethereum wallet connected to defendants Brewer and Litz from cryptocurrency exchanges that had received proceeds from the Bittensor attack.  (*Id.* at ¶¶ 76, 78.)

Defendants argue at length that plaintiff's allegations are consistent with a plausible explanation that none of the defendants were involved in the Bittensor attack and that their alleged actions have various legitimate business explanations.  (Doc. Nos. 15 at 20–22; 16 at 27–

---

[12]  Defendants also argue that plaintiff's allegations must satisfy the heightened pleading standard for pleading fraud under Rule 9.  (Doc. No. 15 at 17.)  "To satisfy the heightened pleading requirements for fraud or fraud-based claims, the pleadings must allege the who, what, when, where, and how of the alleged fraudulent conduct[.]"  *Oracle Am., Inc. v. Serv. Key, LLC*, No. 12-cv-00790-SBA, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) (internal quotation marks and citation omitted) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  In moving to dismiss, defendants do not identify how plaintiff's detailed allegations fail to meet this heightened pleading standard.  In defendant Brewer's reply, he contends that plaintiff's allegations amount to "group pleading" which is impermissible under Rule 9(b).  (Doc. No. 33 at 10.)  However, the court relies only on the specific individual allegations regarding each of defendants' conduct and therefore need not consider whether some allegations constitute impermissible group pleading.

1    31.)  This argument is unpersuasive for purposes of resolving the pending motion.  "If there are

2    two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both

3    of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."

4    *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also In re Century Aluminum Co. Secs.*

5    *Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (holding that the plaintiff must allege facts that tend to

6    exclude the defendant's explanation to render the plaintiff's theory plausible).  Plaintiff's

7    allegations regarding defendants Brewer and Litz's connections to cryptocurrency wallets which

8    transferred proceeds from the Bittensor attack to an alleged laundering service and its allegations

9    regarding St. George's control over the FileTAO codebase tend to exclude defendant's alternative

10   explanations for their conduct.  At the motion to dismiss stage of the litigation, because plaintiff

11   has alleged a plausible claim against each of the individual defendants, the court must reject

12   defendants' argument.

13                    c.      *Whether Software is a Device Under the Wiretap Act*

14          Defendants argue that plaintiff has only alleged that a piece of software intercepted

15   communications and that software is not a "device" under the Wiretap Act.  (Doc. No. 15 at 29–

16   30.)  Plaintiff contends in opposition that the prevailing view among federal courts is that

17   software is a device within the meaning of the Wiretap Act.  (Doc. No. 24 at 27–28.)

18          "To plead a plausible claim under the Federal Wiretap Act, Plaintiffs' complaint must

19   demonstrate that [the defendant] (1) without consent (2) intentionally intercepted the (3) contents

20   of a communication (4) *using a device*."  *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347,

21   1354 (S.D. Cal. 2024) (emphasis added).  The Wiretap Act defines "[e]lectronic, mechanical, or

22   other device . . . as any device or apparatus which can be used to intercept a wire, oral, or

23   electronic communication other than [inapplicable exceptions]."  18 U.S.C. § 2510.  Several

24   district courts have concluded that software is a "device" within the meaning of the Wiretap Act.

25   *India Price*, 712 F. Supp. 3d at 1361–62 (holding that, because software requires a computer to

26   function and a computer is undoubtedly a physical device, software is a device within the

27   meaning of the Wiretap Act); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D.

28   Cal. 2015) (concluding that software, as a component of a computer, is a device for purposes of

                                                   30

the Wiretap Act); *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) ("The majority of courts to consider this issue have entertained the notion that software may be considered a device for the purposes of the Wiretap Act.").  Moreover, many district courts within this circuit, when interpreting the meaning of "device" under the California Invasion of Privacy Act ("CIPA"), have found that the definition of device is the same under both CIPA and the Wiretap Act and concluded that software constitutes a device under both provisions.  *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 956 (N.D. Cal. 2024) (noting that analysis for a violation of CIPA is the same as for a violation of the Wiretap Act and concluding that software is a device for purposes of both); *see also Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856 (W.D. Wash. 2024) (same); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 957 (E.D. Cal. 2025) (same).  In light of this persuasive authority, the court concludes that the purported malware that plaintiff alleges defendants deployed constitutes a device for purposes of the Wiretap Act.

For the reasons explained above, the court will deny defendants' motion to dismiss the FAC's second claim for violation of the Wiretap Act.

       3.    <u>Fraud (Claim 3)</u>

Defendants move to dismiss plaintiff's third claim for fraud on the basis that plaintiff has failed to allege facts that make out the elements of a fraud claim under California law.  (Doc. Nos. 15 at 30–31; 16 at 29, 31.)  Under California law, "[t]he elements of fraud are:  (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citing *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996)).  Defendants' argument in this regard is conclusory, stating only that the FAC does not allege what fraudulent statement each defendant made.  (Doc. Nos. 15 at 31; 16 at 29.)  Plaintiff contends that it has alleged that each defendant was involved in the uploading of the purportedly malicious 6.12.2 software which intentionally mimicked a standard Bittensor software update.  (Doc. No. 24 at 29.)

/////

1    Plaintiff has clearly alleged that the uploading of version 6.12.2 is the fraudulent statement

2    at issue, insofar as the malicious version misrepresented itself as an authentic update from

3    Opentensor.  (Doc. No. 14 at ¶ 114.)  Defendants' argument appears to be that plaintiff has only

4    alleged generally that defendants uploaded that version of the update, but impermissibly lumped

5    defendants together in doing so.  (*Id.* at ¶ 48; Doc. No. 33 at 10 (arguing that Rule 9(b) prevents

6    group pleading of this form).)  "There is no flaw in a pleading, however, where collective

7    allegations are used to describe the actions of multiple defendants who are alleged to have

8    engaged in precisely the same conduct."  *United States v. United Healthcare Ins. Co.*, 848 F.3d

9    1161, 1184 (9th Cir. 2016) (discussing the particularity requirements of Rule 9(b)); *see also*

10   *Activision Publ'g, Inc. v. EngineOwning UG*, No. 22-cv-00051-MWF-JC, 2023 WL 3272399, at

11   *24 (C.D. Cal. Apr. 4, 2023) (rejecting the defendants' argument that the plaintiff improperly

12   engaged in group pleading where the plaintiff specifically alleged the role of each defendant in

13   the fraud even where some allegations grouped the defendants together).  As discussed above,

14   plaintiff has made detailed allegations regarding each defendant's connection to the Bittensor

15   attack and has alleged that each defendant took part in the act of uploading a malicious software

16   file.  Accordingly, the court rejects defendants' argument that plaintiff has not specifically alleged

17   that each defendant made a fraudulent statement since it has alleged that they uploaded a

18   purportedly malicious version of what appeared to be a standard software update.  Because this

19   particularity challenge is the only basis on which defendants moved for dismissal of plaintiff's

20   fraud claim, their motion to dismiss the FAC's claim 3 must be denied.

21            4.    Conversion (Claim 4)

22   Defendants move to dismiss plaintiff's fourth claim in the FAC for conversion on the

23   basis that plaintiff has failed to allege facts which make out the elements of a conversion claim

24   under California law.  (Doc. No. 15 at 31.)  "The elements of a conversion claim are:  (1) the

25   plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a

26   wrongful act or disposition of property rights; and (3) damages."  *Nguyen v. Stephens Inst.*, 529 F.

27   Supp. 3d 1047, 1057–58 (N.D. Cal. 2021) (internal quotation marks omitted) (quoting *Lee v.*

28   *Hanley*, 61 Cal. 4th 1225, 1240 (2015)).  As with defendants' argument regarding plaintiff's fraud

1    claim, defendants' argument as to the conversion claim is conclusory, stating only that plaintiff

2    has failed to allege that the "specific stolen proceeds have been traced to Brewer or any of the

3    named Defendants or that any of them ever knowingly received stolen assets." (Doc. No. 15 at

4    31.) The court has already rejected this argument in support of dismissal above, where it

5    concluded that plaintiff has plausibly plead that each defendant was involved in the Bittensor

6    attack, that assets taken in that attack were transferred to and from a wallet associated with

7    defendants Litz and Brewer, and that what may be reasonably inferred to be proceeds from that

8    attack were deposited in a wallet associated with defendants Litz and Brewer. Nevertheless, the

9    court notes that plaintiff has not made any allegation that defendant St. George came into

10   possession of stolen property. Accordingly, the court will grant defendant St. George's motion to

11   dismiss plaintiff's fourth cause of action for conversion as to himself and otherwise deny the

12   motions to dismiss plaintiff's fourth cause of action as to defendants Litz and Brewer.

13          5.      Unjust Enrichment (Claim 5)

14          Defendants move for dismissal of plaintiff's fifth claim for unjust enrichment, arguing that

15   plaintiff has failed to allege facts which support the elements of unjust enrichment. (Doc. No. 15

16   at 32.) "In California, there is not a standalone cause of action for unjust enrichment, but [w]hen

17   a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract

18   claim seeking restitution." *Rodriguez v. Mondelèz Glob. LLC*, 703 F. Supp. 3d 1191, 1213 (S.D.

19   Cal. 2023). "The doctrine applies where plaintiffs, having no enforceable contract, nonetheless

20   have conferred a benefit on defendant which defendant has knowingly accepted under

21   circumstances that make it inequitable for the defendant to retain the benefit without paying for

22   its value." *James v. Chocmod USA Inc.*, 773 F. Supp. 3d 945, 962 (E.D. Cal. 2025) (internal

23   quotation marks omitted). "Quasi-contract claims require the plaintiff to show '(1) a defendant's

24   receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense.'" *Mendoza v.*

25   *Procter & Gamble Co.*, 707 F. Supp. 3d 932, 945 (C.D. Cal. 2023). Here, plaintiff alleges that

26   the benefit was the value of the digital assets owned by the assignors which were taken during the

27   Bittensor attack. (Doc. No. 14 at ¶ 127.) Because the court has already concluded that plaintiff

28   has stated cognizable fraud and conversion claims regarding those assets, the court similarly

1    concludes that plaintiff has stated a cognizable unjust enrichment claim.  *Bhatia v. Silvergate*

2    *Bank*, 725 F. Supp. 3d 1079, 1126 (S.D. Cal. 2024) (finding that the plaintiffs' allegations that the

3    defendant received a benefit by aiding and abetting fraud and conversion of the plaintiffs' funds

4    were sufficient to state a cognizable unjust enrichment claim).  Accordingly, the court will deny

5    defendants' motion to dismiss plaintiff's fifth cause of action for unjust enrichment.

6            6.    Imposition of a Constructive Trust and Disgorgement of Funds (Claim 6)

7            Defendants move to dismiss plaintiff's sixth cause of action for imposition of a

8    constructive trust on the basis that it is a remedy and not an independent cause of action.  (Doc.

9    No. 15 at 33.)  It has been recognized that a "plaintiff may seek a constructive trust as a form of

10   relief for one or more of its substantive claims, but that remedy is not an independent cause of

11   action."  *A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Assoc.*, 491 F. Supp. 3d 727, 736

12   (E.D. Cal. 2020); *see also Mirkooshesh v. Elie*, No. 22-cv-07615-WHO, 2023 WL 2652240, at *6

13   (N.D. Cal. Mar. 26, 2023); *but see Gedau v. Evans*, No. 25-cv-00335-MMA-JLB, 2025 WL

14   1457081, at *7 (S.D. Cal. May 21, 2025) (noting that, while federal courts within the Ninth

15   Circuit have interpreted California law to not permit imposition of a constructive trust as an

16   independent cause of action, California state courts have not explicitly disallowed it).  The court

17   will therefore grant defendants' motion to dismiss plaintiff's sixth cause of action without leave

18   to amend.

19           7.    Violation of California Penal Code § 496 (Claim 7)

20           Defendants move to dismiss plaintiff's seventh claim for violation of California Penal

21   Code § 496 on the following bases:  (1) that plaintiff has failed to allege facts stating a cognizable

22   claim for violation of § 496; (2) that plaintiff has failed to allege that any tortious acts occurred in

23   California and § 496 cannot extend to conduct occurring in other states; and (3) that plaintiff

24   lacks standing as an assignee to bring an action for punitive damages.  (Doc. No. 15 at 33–34.)

25   The court addresses each of these arguments below.

26           To state a claim pursuant to California Penal Code § 496 for possession of stolen property,

27   a plaintiff must allege:  "(1) that the property has been stolen; (2) that the accused received,

28   concealed[,] or withheld it from its owner; and (3) that the accused knew the property was

                                                    34

stolen." *Nowak*, 2020 WL 6822888, at *2 (internal quotation marks omitted) (quoting *People v. Stuart*, 272 Cal. App. 2d 653, 656 (1969)).  As has been recognized, "[i]f a plaintiff adequately pleads fraud in a case like this, it follows that it adequately pleaded theft by false pretense (which satisfies the first element of a § 496 violation) because the elements of a civil fraud claim closely track those of theft by false pretense." *River Supply, Inc. v. Oracle Am., Inc.*, No. 3:23-cv-02981-LB, 2023 WL 7346397, at *16–17 (N.D. Cal. Nov. 6, 2023) (cleaned up) (quoting *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 242 (9th Cir. 2021)).  Because the court has already concluded that plaintiff has stated a cognizable fraud claim, the court also finds that plaintiff has alleged the first element of a § 496 claim.  Additionally, the court has already concluded above that plaintiff has alleged that defendants Litz and Brewer received proceeds from the Bittensor attack.  Accordingly, the court finds that plaintiff has alleged the second and third elements and has therefore stated a cognizable claim for relief pursuant to § 496 against defendants Litz and Brewer.  *See Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1012–13 (N.D. Cal. 2024) (holding that the plaintiff stated a cognizable claim for relief pursuant to § 496 where the plaintiff alleged that the defendant had knowingly maintained possession of property that it knew to be stolen).  However, for the same reasons as noted above with respect to plaintiff's claim for conversion, the court finds that plaintiff has not stated a cognizable claim for relief pursuant to § 496 against defendant St. George and will grant his motion to dismiss the FAC's seventh cause of action as to him.

Defendants argue that plaintiff has failed to allege that any tortious acts, or any part thereof, occurred in California and therefore plaintiff is barred from asserting a § 496 claim by the presumption against extraterritoriality.  (Doc. No. 15 at 34.)  Defendants' argument is premature.  Plaintiff has alleged that some of its assignors are California residents, that defendant Brewer is a California resident, and that FileTAO is headquartered in California.  *See C.M. v. MarinHealth Med. Grp., Inc.*, No. 23-cv-04179-WHO, 2024 WL 217841, at *5 (N.D. Cal. Jan. 19, 2024) (denying a motion to dismiss based upon a similar extraterritoriality argument because plaintiff had alleged his own California residency, that defendant was a California resident, and that the receiver of the purportedly stolen proceeds was a California resident); *see also Doe v. Meta*

*Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078–79 (N.D. Cal. 2023) (denying a motion to dismiss a CIPA claim on the grounds that the extraterritoriality issue being raised was premature).[13] Plaintiff has plausibly alleged that at least some of the events in preparation of the Bittensor attack and the execution of that attack took place in California.  This is sufficient and compels the rejection of defendants' extraterritoriality argument at the motion to dismiss stage.

Finally, defendants' contention that plaintiff may not sue for punitive damages under § 496 as an assignee is unpersuasive.  *See Capitol Specialty Ins. Co. v. Stedfast Ins. Co.*, No. 2:20-cv-01382-JCM-VCF, 2022 WL 16902545, at *3 (D. Nev. Mar. 31, 2022) ("District courts sitting in California have already . . . held instead that 'whether punitive damages may be assigned does not rely on the nature of the relief [but] upon the nature of the cause of action it is brought under.") (quoting *Great Am. Ins. Co. v. Vasquez Marshall Architects*, No. 19-cv-01173-CAB-NLS, 2019 WL 4242481, at *3–4 (S.D. Cal. Sept. 6, 2019)).  Rather, a claim is not assignable under California law only when the underlying cause of action pertains to "wrongs done to the person, the reputation, or the feelings of the injured party, and to contracts of a purely personal nature."  *Diehl v. Starbucks Corp.*, No. 12-cv-02432-AJB-BGS, 2014 WL 295468 (S.D. Cal. Jan. 27, 2014) (internal quotation marks omitted) (quoting *Wikstrom v. Yolo Fliers Club*, 206 Cal. 461, 464 (1929)).  Whether a claim for punitive damages may be assigned "does not rely on the nature of the relief, instead it relies upon the nature of the cause of action it is brought under." *Id.*  Defendants have raised no argument that a claim brought under § 496 is "purely personal" such that it cannot be assigned, but only that the ability to seek punitive damages in such an action cannot be assigned.  (Doc. No. 15 at 34.)  Based on the authority cited above, the court rejects this argument.

---

[13]  The cases relied upon by defendants in support of their extraterritoriality argument are ultimately unpersuasive because both pertain to allegations of fully out-of-state conduct.  *See Dfinity USA Rsch. LLC v. Bravick*, No. 22-cv-03732-EJD, 2023 WL 2717252, at *5 (N.D. Cal. Mar. 29, 2023) (dismissing a § 496 claim because the basis for the plaintiff's claim took place "solely in Michigan"); *see also Scosche Indus., Inc. v. S & T Montgomery Distrib., Inc.*, No. 2:22-cv-09030-SVW-MAA, 2024 WL 4003894, at *4 (C.D. Cal. June 5, 2024) (dismissing a § 496 claim because, although the plaintiff received fraudulent bills within California, those bills were fully prepared in Alabama).

1    Accordingly, the court will deny defendants Litz and Brewer's motions to dismiss

2    plaintiff's seventh cause of action for violation of California Penal Code § 496.

3    **D.    Motion for Sanctions**

4    In their motion for sanctions, defendants maintain that plaintiff's claims are factually

5    baseless, not likely to be supported by the evidence, that plaintiff's counsel did not conduct a

6    reasonable inquiry before filing those claims, and accordingly that sanctions should be imposed.

7    (Doc. No. 40 at 18–24, 26–29.)  Defendants separately argue that plaintiff's arguments regarding

8    personal jurisdiction over defendants St. George and Litz are legally baseless.  (Doc. No. 40 at

9    24–26.)  The undersigned rejects this latter argument because it has concluded above that this

10   court may exercise personal jurisdiction over defendants St. George and Litz.  The court

11   considers the arguments related to the lack of evidence supporting plaintiff's allegations below.

12   "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."  *In re*

13   *Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (quoting *Operating Eng'rs*

14   *Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)).  "[T]he central purpose of Rule

15   11 is to deter baseless filings in district court and . . . streamline the administration and procedure

16   of the federal courts."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  When a

17   court examines a complaint for frivolousness under Rule 11, it must determine both:  (1) whether

18   the complaint is legally or factually baseless from an objective perspective, and (2) whether the

19   attorney conducted a reasonable and competent inquiry before signing it.  *Holgate v. Baldwin*,

20   425 F.3d 671, 676 (9th Cir. 2005).  "Rule 11's standard for factual support is not a high one.  All

21   that is needed is some evidence to support the party's factual allegations."  *FTC v. Kochava Inc.*,

22   No. 2:22-cv-00377-BLW, 2023 WL 7283113, at *3 (D. Idaho Nov. 3, 2023) (internal citations

23   and quotation marks omitted).  "Further, circumstantial evidence, and the reasonable inferences

24   drawn from that evidence, are treated as evidentiary support for purposes of Rule 11."  *Benedict*

25   *v. Hewlett-Packard Co.*, No. 13-cv-00119-LHK, 2014 WL 234207, at *5 (N.D. Cal. Jan. 21,

26   2014) (internal quotation marks omitted).

27   First, defendants argue that plaintiff's theory that defendants were the designers of the

28   malware used in the Bittensor attack is factually baseless.  (Doc. No. 40 at 18–20.)  Specifically,

1    defendants contend that plaintiff's allegation that defendant St. George had access to the PyPI key

2    before his resignation from Opentensor and that defendants St. George and Brewer had certain

3    technical expertise are insufficient to support a reasonable inference that defendants designed the

4    malware.  (*Id.*)  The court first observes that the only allegation which defendants directly deny—

5    that defendant St. George retained the PyPI key after his resignation from Opentensor—is not

6    even contained within plaintiff's FAC.  As for whether the other alleged facts, which defendants

7    do not deny, support a reasonable inference that defendants were the perpetrators of the Bittensor

8    attack, the court has already found above that they do.  Accordingly, the court rejects defendants'

9    first argument in support of the imposition of sanctions against plaintiff.

10        Second, defendants argue that plaintiff's allegations of a conspiracy "are conclusory and

11   unsupported by facts."  (Doc. No. 40 at 20–21.)  In this regard, defendants "merely rehash[]" the

12   arguments made in their motions to dismiss, particularly arguments regarding group pleading.

13   (*Id.*); *see also Dakavia Mgmt. Corp. v. Bigelow*, No. 1:20-cv-00448-NONE-SKO, 2022 WL

14   104245, at *14–15 (E.D. Cal. Jan. 10, 2022) (denying a motion for sanctions where it largely

15   rehashed the arguments set forth in the defendants' motion to dismiss).  For the same reasons that

16   the court found this argument unpersuasive in considering defendants' motions to dismiss, the

17   court also rejects this argument in the context of defendants' motion for sanctions.

18        Finally, defendants argue that plaintiff's allegations regarding the transfer of funds on

19   blockchains are intentionally misleading and lack factual support.  (Doc. No. 40 at 21–24.)  In

20   essence, defendants dispute a few specific allegations made by plaintiff:  (1) that the wallet

21   referred to as a "Suspected Laundering Service" can reasonably be alleged to be a laundering

22   service; (2) that the wallet which was involved in a transfer of assets to this laundering service

23   address "belong[ed] to Litz[;]" and (3) that plaintiff's allegations imply the transfer was direct

24   when in fact the transfer of assets went through multiple wallets first.  (*Id.*)

25        As to the first disputed allegation, defendants present a declaration from Jeremy Sheridan,

26   the managing director of FTI Consulting Technology, LLC which provides "digital forensic

27   consulting services."  (Doc. No. 40-6 at ¶¶ 2, 3.)  Mr. Sheridan declares that he examined the

28   basis for the allegation that the Suspected Laundering Service was involved with a previous

1    incident of cryptocurrency theft and observes that the wallet appeared to "stake" assets it received

2    "on-chain to earn ETH rewards" similar to investing in a savings account.  (*Id.* at ¶ 15.)  He also

3    declares that the wallet appeared to send high proportions of the purportedly stolen funds to the

4    same "beacon chain" address.  (*Id.*)  Mr. Sheridan concludes that such behavior was unusual for a

5    cryptocurrency laundering service.  (*Id.*)  With its opposition, plaintiff presents a declaration from

6    Adam Zarazinski, the founder and CEO of Inca Digital who possesses "significant expertise" in

7    digital forensics, financial data analysis, and cryptocurrency.  (Doc. No. 42-1 at ¶ 2.)  Mr.

8    Zarazinski disagrees with Mr. Sheridan's conclusions, noting that there have been multiple

9    transactions involving the Suspected Laundering Service wallet that involved stolen

10    cryptocurrency and that the financial transactions described by Mr. Sheridan are not atypical of

11    laundering cryptocurrency.  (*Id.* at ¶¶ 20, 21.)  Of course, "the Court's present role is not to weigh

12    the evidence.  Rather the court need only determine whether there was some factual basis

13    supporting Plaintiffs' position."  *Gold Glove Prods. v. Handfield*, No. 13-cv-07247-DSF-RZX,

14    2014 WL 12560617, at *2 (C.D. Cal. June 4, 2014).  Defendants do not meaningfully dispute Mr.

15    Zarazinski's qualifications and it is plain that his declaration constitutes some evidence that the

16    Suspected Laundering Service is a wallet associated with cryptocurrency laundering.

17    Accordingly, the court finds that plaintiff has shown some factual basis for its allegation that the

18    Suspected Laundering Service was involved with laundering cryptocurrency assets.

19          As to plaintiff's second and third allegations which the defendants dispute, defendants

20    plainly misstate the allegations of the FAC, since plaintiff only alleges therein that various wallets

21    are associated with—not owned by—defendants Brewer and Litz based on publication of a non-

22    fungible token and at no point alleges that the purported transfer of cryptocurrency assets were

23    direct.  (Doc. No. 14 at ¶¶ 64, 68 (alleging that various intermediary transactions were used to

24    transfer proceeds from the Bittensor attack), 76, 78 (associating certain wallet addresses with

25    defendants Brewer and Litz based off of the activity of those wallets).)  Accordingly, the court

26    rejects defendants' arguments in this regard.

27    /////

28    /////

1    Having found that plaintiff has provided some evidence of a factual basis for the

2    allegations of its first amended complaint, the court will deny defendants' motion seeking the

3    imposition of sanctions.[14]

4    **E.      Leave to Amend**

5    Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

6    P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

7    amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

8    Reasons "such as undue delay, bad faith or dilatory motive . . .  repeated failure to cure

9    deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

10   leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Dismissal without leave to amend is

11   proper if it is clear that "the complaint could not be saved by any amendment."  *Intri-Plex Techs.*

12   *v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citation omitted); *see also Ascon Props., Inc.*

13   *v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the

14   amendment of the complaint . . . constitutes an exercise in futility . . . .").  A district court "should

15   grant leave to amend even if no request to amend the pleading was made, unless it determines that

16   the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and*

17   *Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

18   Several of the pleading deficiencies identified in this order could conceivably be cured by

19   additional and more detailed allegations.  Therefore, the court will grant plaintiff leave to amend

20   its FAC.  *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("It is

21   black-letter law that a district court must give plaintiffs at least one chance to amend a deficient

22   complaint, absent a clear showing that amendment would be futile.").

23   /////

24   /////

25   /////

26

27

28

---

[14]  In the court's view, it is defendants' motion for sanctions that is not well-supported.  The court reminds the parties and their counsel that the Eastern District of California faces an overwhelming caseload and admonishes counsel that it will not look favorably on future unfounded motions.

40

**CONCLUSION**

For the reasons above,

1.     Defendant Brewer's motion to dismiss (Doc No. 15) and defendants St. George and Litz's motion to dismiss (Doc. No. 16) are GRANTED in part and DENIED in part as follows:

    a.     Defendants St. George and Litz's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is DENIED;

    b.     Defendants' motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) are GRANTED with leave to amend as to the following claims:

        i.     Violation of the CFAA (Claim 1);

        ii.     Conversion as to defendant St. George (Claim 4);

        iii.     Imposition of a constructive trust and disgorgement of funds (Claim 6); and

        iv.     Violation of California Penal Code § 496 as to defendant St. George (Claim 7);

    c.     Defendants' motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) are otherwise DENIED;

2.     Defendants Litz and St. George's request for judicial notice (Doc. No. 18) is DENIED;

3.     Plaintiff's request to seal (Doc. No. 30) is GRANTED;

4.     Within seven (7) days from the date of entry of this order:

    a.     Plaintiff shall file a redacted version of Exhibit D to the declaration of Gyles Foster and a redacted version of Exhibits C and D to the declaration of Margaret Hoppin, redacting the personal information contained therein; and

/////

41

b. Plaintiff shall file unredacted versions of the identified documents under seal;

5. Defendants' motion for the imposition of sanctions (Doc. No. 40) is DENIED;

6. Plaintiff shall file its second amended complaint, or alternatively, a notice of its intent not to do so, within twenty-one (21) days from the date of service of this order;

7. If plaintiff files a notice of intent not to file a second amended complaint, then defendants shall file an answer as to the claims found to be cognizable in this order within twenty-one (21) days of service of that notice; and

8. In accordance with its prior order (Doc. No. 37), the court hereby RESETS the Initial Scheduling Conference in this case for February 23, 2026 at 1:30 p.m. before the undersigned via Zoom.  The parties may file a joint status report containing any additional scheduling information that they wish the court to consider not included in their previously filed joint status report (Doc. No. 36) no later than February 9, 2026.

IT IS SO ORDERED.

Dated: __**November 14, 2025**__       _Dale A. Drozd_

             DALE A. DROZD
             UNITED STATES DISTRICT JUDGE